FILED
2009 Apr-06  AM 08:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

DONNA JOHNSON,                          )
                                        )
                 Plaintiff              )
                                        )
    vs.                                 )        Case No.  4:07-cv-01607-HGD
                                        )
TIMOTHY GARRETT, et al.,                )
                                        )
                 Defendants             )

## MEMORANDUM OPINION

This matter is before the undersigned magistrate judge based on the consent of the parties pursuant to 28 U.S.C. § 636(c) and LR 73.2.  Prior to trial, two previously named defendants, Timothy Wyant and Jana Lee Wyant, settled with plaintiff and the claims against them were dismissed.  A non-jury trial was held on January 20, 2009, at the Federal Courthouse in Gadsden, Alabama, with regard to the remaining defendants, Timothy Garrett, Jake Fowler, and the Town of Fyffe, Alabama.

At trial, plaintiff, Donna (Wyant) Johnson, testified that she is the ex-wife of Timothy Wyant.  On or about October 21, 2005, plaintiff filed for divorce and sought pendente lite relief.  Because she and her soon-to-be ex-husband could not agree on a division of property, she decided to litigate this issue.  According to plaintiff, until the Wednesday before the incident that is the subject of this litigation occurred her

husband, who worked at night, had a key to the residence and would come by and sleep there during the day.  The deed to the property was in both of their names.

On the Wednesday before the incident made the basis of this action, Ms. Johnson changed the locks on the doors to the residence and put Timothy Wyant's clothing in the garage.  However, she acknowledged that, at this time, there was no court order in effect prohibiting Timothy Wyant from entering into the residence.  She also admitted that she did not speak to her husband about coming to the residence to get any of his property before she changed the locks.

On Saturday, October 29, 2005, Johnson was at home in the morning when she heard a loud banging on her front door.  When she peered outside, she observed a moving van backed up to the garage and two men.  When she peeked a second time, she observed her husband and his sister, Jana Wyant.  Johnson testified that she was frightened by this and called a friend.  She also requested a police officer to come by.

The officer who arrived at the residence was Officer Timothy Garrett, a police officer for the Town of Fyffe, Alabama.  Garrett initially spoke to Ms. Johnson, who remained inside the residence, from outside the front door of the residence.  He told Johnson that her husband wanted to get his belongings.  Johnson testified that she told Officer Garrett that they were in the garage.  However, Officer Garrett told her that her husband wanted more than just the property which she had put in the garage. She testified that the officer told her that her husband could come into the house and

get it if he wished to do so.  She testified that Garrett stated that, because the house was as much Timothy Wyant's as it was hers, he could come in and take what he wanted and that there was nothing that she could do about it.  In reference to the front door that Ms. Johnson had continued to keep locked up to this point, she testified that Officer Garrett told her, in a hostile tone, that Timothy Wyant could break down the front door if he wanted to do so.  He told her that she needed to open the door for him so that this would not happen.

Johnson stated that she told the officer about the pending divorce, but he advised her that this did have any effect on the situation.  He reiterated that her husband could break down the door to get what he wanted and that she needed to unlock the door for him.  Eventually, the husband of the friend plaintiff called earlier also arrived.

According to Ms. Johnson, while Officer Garrett was trying to get her to open the door, Timothy Wyant's sister, Jana Wyant, was behind the officer saying things such as "[y]ou can't talk to her, you need to just go on in."  Eventually, plaintiff allowed Officer Johnson into the residence.  He again told plaintiff that she needed to open the door.  Johnson testified that she advised the officer that she would let her husband in, but no one else.  Officer Garrett advised her that, because the residence was her husband's as well as hers, he could allow the others to enter as his guests, including his sister.

Officer Garrett telephoned Fyffe Police Chief Jake Fowler.  Fowler told Johnson that her husband had the right to enter the residence and get what he wanted because it was his house.  She testified that she told Chief Fowler about the pending divorce, but he asked her if she had a court order (to keep Timothy Wyant out of the residence) and she admitted that she did not.

Ms. Johnson stated that she opened the door and let everyone in because the officer and Chief Fowler told her that she had to do so.  When she began to object to certain items being taken, she stated that she was told by the officer to shut up or go to jail.  She also testified that, on one occasion the telephone rang and the officer accused her of calling someone to come over to the house.  He told her not to call anyone to come to the house or he would put her in jail.

According to Ms. Johnson, Jana Wyant was nearby making remarks about the plaintiff in a hostile manner.  Johnson requested that Officer Garrett make Jana Wyant go outside, but he initially refused.  On a later occasion, Johnson testified that Jana Wyant shoved her when she was in an upstairs bedroom and that the officer did nothing.  However, on cross-examination she acknowledged that Officer Garrett was downstairs when this incident occurred and that he did later make Jana go outside, although he had to tell her repeatedly to do so.  Plaintiff also testified that, on a later date, Jana pled guilty to a charge of harassment that was based on this incident.

During this time, the movers and Timothy Wyant were taking items out of the residence.  He wanted to get into Johnson's son's (from a previous marriage) bedroom to take the son's bed.  The door to that bedroom was locked.  Plaintiff stated that the officer told her that, if she did not open it, her husband would use a crowbar to obtain access to the room.  Her husband had a crowbar to do this.  However, a mover opened the door with a credit card before this happened.

Ms. Johnson testified that she asked Officer Garrett if she could make a list of the items that were being taken and have it signed.  He refused.  However, she acknowledged that much of the property taken by her husband that day was returned in accordance with the divorce decree.  Some of it was in poor condition when she received it back.  On cross-examination, she stated that Officer Garrett did not tell her that she could not make a list, just that he would not sign it.  Because he would not sign it, she testified that she did not make one.

Johnson testified that this incident caused her mental anguish and that she now feels that there is no place where she can be safe.  She also testified that she had run a barbershop from her home for almost a year.  She had done similar work for 18 years.  According to Johnson, this incident made her too afraid to continue to work from her home and that she now works as a vendor at Lowe's.  She testified that the officer made her feel like a criminal.  While the incident was occurring, he told her not to interfere or bicker or he would take her to jail.

Johnson testified that she knows of no connection between her now ex-husband and Officer Garrett prior to the date of this incident. When asked if she thought Garrett acted in the manner he did because she was female, she responded, "I don't know why he done what he done."

Arlon Clifton testified that he lived about five miles from Donna Johnson at the time of this incident and that he went over to this location at the request of his wife, a friend of Johnson's. When he arrived, Officer Garrett asked him why he was there and suggested that he leave. However, Clifton testified that he would not leave unless ordered to do so. Officer Garrett then asked Clifton to request Johnson to let them in the residence. Initially, Johnson would not let him in either. Eventually, however, she did. According to Clifton, Johnson was "shaking like a leaf in a 40 mile-per-hour wind." He tried to calm her down and said a prayer with her.

While Clifton was talking to Ms. Johnson, Officer Garrett told her, "Mrs. Johnson [sic] please let us in. If you don't, he's going to break the door down and there's nothing I can do about it." Ms. Johnson eventually let them in. Once her husband, his sister and the movers got inside it was, according to Clifton, "like a blue light special." A lot of items were removed from the residence and placed on a van. They appeared to have "free rein" of the residence. Johnson's son's room was locked, and her husband retrieved a crowbar to break into the room. Clifton heard Officer Garrett tell Johnson that her husband could break down the door to the room

if he wanted to.  However, before he used the crowbar, entry into the room was achieved by other means.

Clifton further testified that Ms. Johnson requested Officer Garrett to keep her husband's sister out of the house, and he responded that "if we have any incidents, I am instructed to take you to jail."  Clifton stated that the only person threatened with jail in his presence was Johnson.  According to Clifton, Jana was the main problem. On one occasion, he observed Jana push Johnson up against a wall.  Clifton stated that "[i]f I was trying to incite a riot, she's (Jana) the one I'd call."  He believed that Jana was trying to provoke Johnson.

Timothy Garrett testified that, on October 29, 2005, he was working as a police officer for the Town of Fyffe when he received a dispatch from the DeKalb County dispatcher requesting that he go to the residence to handle a dispute.  Initially, he declined to go on the ground that he believed it was a civil dispute.  However, he called Chief Fowler.  Chief Fowler told him that he believed Johnson and her spouse were going through a hard time and that he believed one of them may have filed for a divorce.  The Chief asked him to go to the residence just to "keep the peace" and to let Timothy Wyant "get his stuff."

Garrett testified he succeeded in getting Ms. Johnson to unlock the front door. Once the door was unlocked, the movers began to take things out.  He stated that he

Page 7 of 23

had no idea which piece of property belonged to whom.  He made no decision on what property was to be taken or left behind.

According to Garrett, he was not at the residence to help the husband in his divorce.  He was merely trying to prevent a breach of the peace.  He stated that the only reason that he went out there was because the Chief asked him to do so and that all he did was stand by and keep the peace.  He further testified that the Chief told him to let Mr. Wyant get his "stuff."

Garrett testified that, when questioned, Timothy Wyant showed the officer his driver's license which reflected that he lived at that residence.  Timothy Wyant told the officer that he was going to get his stuff from inside the house and would kick in the door.  Officer Garrett testified that he told him that he could not stop him but that if Ms. Johnson were nearby when the door broke, he would consider it to be domestic violence.

Garrett then went to the locked front door to attempt to speak with Ms. Johnson.  He tried to explain to her that he (Garrett) could not keep Timothy Wyant from entering the house and that it would be easier if she just let him in.  Eventually, she did so.

According to Officer Garrett, he explained to "everyone" that if things got out of hand, someone would go to jail.  He also testified that he told the husband to let him handle the situation with plaintiff.  Eventually, while standing downstairs, Garrett

testified that he overheard a squabble upstairs between plaintiff and Jana Wyant. He went to the bottom of the steps and observed Jana and Ms. Johnson. He told Jana to go outside and not to return.

Officer Garrett testified that he did not prepare an incident report concerning the events of that day. He went out to the residence because the Chief told him to do so. He states that he did not carry any furniture out or help anyone carry any furniture out of the house.

Jake Fowler testified that he is the Chief of Police for the Town of Fyffe and was so employed on October 29, 2005. Chief Fowler acknowledged that the police chief makes policy decisions for the police department.

Fowler testified that he was aware that Tim Wyant was going to be moving out of his house because Wyant had called him the Wednesday or Thursday before the date of the incident to request that a police officer come out with him. Fowler testified that he refused this request and told him that a police officer would go out only if a problem developed. According to Fowler, if asked, an officer can advise a party as to what their rights are. When a house belongs to a party and another party refuses access, if asked what he can do, the officer would respond that he cannot stop him from gaining access to the house. He can inform both parties of what their rights are on such an occasion.

Chief Fowler testified that he did not see anything wrong with Officer Garrett telling Mr. Wyant that he could break down the door.  This, standing alone, is not a breach of the peace.  Likewise, he testified that Ms. Johnson did nothing wrong by refusing to open the door.  Fowler stated that he told Garrett that the police department could not make plaintiff let Wyant in and, at the same time, could not stop him from going in.  They could not stop either party.  Under the circumstances that existed at that time, Officer Garrett remained on the property to keep the peace.  Both parties were legal residents of the house.  All the police department could do was to make sure that no one got hurt.  Ms. Johnson never reported that she was in fear for her own safety.

**DISCUSSION**

Plaintiff makes two claims against defendants.  Her first claim is that the actions of Officer Garrett and Chief Fowler violated 42 U.S.C. § 1983 by assisting her husband in gaining entrance to their residence and in removing property from that residence.  Her second claim alleges that her husband and the officer and police chief together conspired to discriminate against her based on her gender.  (Doc. #48, Plaintiff's Opposition to Defendants' Motion for Directed Verdict, at 3-4).

**Alleged 42 U.S.C. § 1983 Violation**

Title 42 U.S.C. § 1983 reads, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

Based on the testimony presented at trial, the court finds that, at the time of the incident, Officer Garrett responded to the scene of what was a purely domestic dispute. Mr. Wyant was locked out of a residence which was titled in his name as well as in the name of the plaintiff. Plaintiff was inside the residence and would not allow her husband to enter. However, there were no court orders or decrees, pendente lite or otherwise, which prohibited Mr. Wyant from entering the residence. Thus, he had a right to enter the residence, even if it were locked. When asked, Officer Garrett truthfully told Mr. Wyant that he (the officer) could not stop him from breaking into his own home. He also truthfully advised plaintiff of this fact. He did not order her to unlock the door and let Wyant in. He simply advised her that Wyant could come into the residence if he wanted to and that the police could not stop him from breaking into his own home. In an effort to avoid a possible breach of the peace,

Garrett repeatedly requested that she unlock the door and let her husband into the residence.  She eventually acquiesced.

The court further finds from the evidence that the officer did not threaten only Ms. Johnson with arrest if there were a breach of the peace; rather, he let all parties know that if they misbehaved they could be arrested.  When shoving occurred between Jana Wyant and Ms. Johnson, out of the sight of Officer Garrett, he ordered Jana out of the residence.  He did not order Ms. Johnson to leave and, in fact, acknowledged that she had as much right to be there as did her husband.

The evidence also reflects that Officer Garrett did not assist in the removal of any property from the residence.  He did not actively participate in the removal of anything.  He also did not prevent anything from being removed from the residence. In short, his involvement in this conflict consisted of correctly advising Mr. Wyant that he could not stop him from breaking into his own home, telling the same thing to Ms. Johnson and then requesting, but not ordering, her to open the door, in order to avoid a potential breach of the peace.

It also was not inappropriate for Officer Garrett not to prevent Mr. Wyant from leaving with whatever property he claimed on that date.  It was not part of Officer Garrett's duties as a police officer to decide which piece of property belonged to plaintiff and which to her husband.  That was appropriately left to the judge in the divorce proceedings.  Plaintiff has failed to point to any rights, privileges, or

immunities secured by the Constitution and laws of which she was deprived by the actions of Officer Garrett or Chief Fowler. Her claim that their actions were based on her gender is completely lacking in evidentiary support. Thus, this claim fails as a matter of law.

However, even if there were some constitutional basis for this claim, both Officer Garrett and Chief Fowler are protected from liability by qualified immunity. Qualified immunity is "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). The doctrine of qualified immunity is intended to protect government officials performing discretionary functions from the burdens of trial and broad-reaching discovery in cases that are insubstantial or that do not allege violations of clearly established law. *Id.* at 526, 105 S.Ct. at 2815; *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738-39, 73 L.Ed.2d 396 (1982).[1] In particular, qualified immunity avoids "distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." *Harlow*, 457 U.S. at 816, 102 S.Ct. at 2737. *Accord Mitchell*, 472 U.S. at 526, 105 S.Ct. at 2815. These important purposes of qualified immunity are thwarted if a case is

---

[1] Defendants could have presented a claim of qualified immunity in a motion for summary judgment; however, no motion for summary judgment ever was filed in this case. Nonetheless, it is appropriately raised here.

erroneously permitted to go to trial. *Mitchell*, 472 U.S. at 526, 105 S.Ct. at 2815. Police officers on the beat, who daily risk their lives to defend society and preserve our system of ordered liberty, are certainly among those government officers that qualified immunity is meant to protect. In the court's view, this case is precisely the type of case that qualified immunity is designed to resolve.

The applicability of qualified immunity is a question of law to be decided by the court. *Ansley v. Heinrich*, 925 F.2d 1339, 1341, 1345 (11th Cir. 1991). To invoke the affirmative defense of qualified immunity, a defendant public official initially bears the burden of proving that he was acting within the scope of discretionary authority when the allegedly wrongful acts occurred. *Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1988). Once the defendant public official satisfies this burden, the burden then shifts to the plaintiff to show that the actions of the defendant public official, at the time they occurred, violated clearly established law. *Id.* at 1564. The defendant public official is entitled to qualified immunity as a matter of law if either (1) the applicable law was not clearly established at the time of the alleged violation, or (2) the plaintiff fails to demonstrate the existence of genuine issues of material fact as to whether the defendant public official's actions violated the clearly-established law. *Mitchell*, 472 U.S. at 526, 105 S.Ct. at 2815; *Rich*, 841 F.2d at 1564.

"To reach the question of whether a defendant official is entitled to qualified immunity, a court must first ascertain whether the plaintiff has sufficiently asserted the violation of a constitutional right at all." *Martinez v. Mafchir*, 35 F.3d 1486, 1490 (10th Cir. 1994) (citing *Siegert v. Gilley*, 500 U.S. 226, 231-32, 111 S.Ct. 1789, 1792-93, 114 L.Ed.2d 277 (1991)). This requires the district court to "first determine whether plaintiff's allegations, if true, state a claim for a violation of a constitutional right that was clearly established when defendant acted." *Bisbee v. Bey*, 39 F.3d 1096, 1100 (10th Cir. 1994) (citing *Siegert*, 500 U.S. at 232, 111 S.Ct. at 1793).

There is no question that Officer Garrett was acting within his discretionary authority as a police officer at the time this incident occurred. He was directed by his chief to go to the residence and "keep the peace." This is precisely what he did.

Although plaintiff asserts that she acquiesced only because Officer Garrett only threatened her with arrest if she interfered, the court finds that Officer Garrett threatened anyone who committed a breach of peace with arrest. Plaintiff's "interference" could well have been considered such a breach since Wyant had a right to be in the residence and to remove property from it. Thus, the court holds that the evidence has failed to reflect the violation of *any* constitutional or statutory right, privilege or immunity. The officer did not deprive Ms. Johnson of her property. He did not assist in its removal or help her husband gain entry into her residence contrary to some court order or decree. Officer Garrett was faced with a Hobson's choice. He

Page 15 of 23

could leave a potentially volatile domestic situation and hope nothing violent occurred, or he could remain and attempt to act as a referee while Wyant performed actions he had a legal right to take, knowing that the situation could quickly escalate if he did not stay.  If Officer Garrett had assisted Mr. Wyant in gaining entry to his residence contrary to a court order or decree of which the officer was aware at that time, plaintiff might have a stronger argument.   As it is, Officer Garrett was attempting to make the best of a bad situation.  In this case, both parties had a legal right to many of the items in the house and they both wanted them all.  Officer Garrett had no legal right to keep Wyant out of the residence or to keep him from taking any items located inside.  All he could legally do was watch the parties squabble over the items taken and prevent physical violence (*i.e.*, a breach of the peace) from occurring.

Assuming that Officer Garrett somehow stepped over the line when he correctly advised both parties that Mr. Wyant could break into his own home and urged Ms. Johnson to let him in, plaintiff has presented no clearly established law that these actions deprived her of any constitutional or statutory right, privilege or immunity.

Plaintiff also claims that the Town of Fyffe is liable to her under § 1983.  The Supreme Court has placed strict limitations on municipal liability under § 1983. There is no *respondeat superior* liability making a municipality liable for the wrongful actions of its police officers in making a false arrest.  *See Monell v.*

*Department of Social Servs*., 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978).  Instead, a municipality may be held liable for the actions of a police officer only when municipal "official policy" causes a constitutional violation.  *See id*. at 694-95, 98 S.Ct. at 2038.  Ms. Johnson must "identify a municipal 'policy' or 'custom' that caused [her] injury."  *Board of County Comm'rs v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997) (citing *Monell*, 436 U.S. at 694, 98 S.Ct. at 2027).  "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989).

Thus, the City is not automatically liable under § 1983 even if it inadequately trained or supervised its police officers and those officers violated Johnson's constitutional rights.  Instead, the Supreme Court has explained that there are only "limited circumstances" in which an allegation of a failure to train or supervise can be the basis for liability under § 1983.  *See City of Canton*, 489 U.S. at 387, 109 S.Ct. at 1204.  The Supreme Court has instructed that these "limited circumstances" occur only where the municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's constitutional rights.  *Id*. at 389-91, 109 S.Ct. at 1205-06; *see*

*also Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1555 (11th Cir. 1989); *Brown*, at 403-04, 407, 117 S.Ct. at 1388, 1390.

Since a municipality rarely will have an express written or oral policy of inadequately training or supervising its employees, the Supreme Court has further explained that a plaintiff may prove a city policy by showing that the municipality's failure to train evidenced a "deliberate indifference" to the rights of its inhabitants:

> We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.  This rule is most consistent with our admonition . . . that a municipality can be liable under § 1983 only where its policies are the "moving force [behind] the constitutional violation."  Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983. . . . "[M]unicipal liability under § 1983 attaches where--and only where--a deliberate choice to follow a course of action is made from among various alternatives" by city policymakers. Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality--a "policy" as defined by our prior cases--can a city be liable for such a failure under § 1983.

*City of Canton*, 489 U.S. at 388-89, 109 S.Ct. at 1204-05 (internal citations omitted).

To establish a "deliberate or conscious choice" or such "deliberate indifference," a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a

deliberate choice not to take any action.  *See Board of County Comm'rs v. Brown*, 520 U.S. 397, 407-08, 117 S.Ct. 1382, 1390-91, 137 L.Ed.2d 626 (1997); *Young v. City of Augusta, Georgia*, 59 F.3d 1160, 1171-72 (11th Cir. 1995)*; Church v. City of Huntsville*, 30 F.3d 1332, 1342-46 (11th Cir. 1994); *Wright v. Sheppard*, 919 F.2d 665, 674 (11th Cir. 1990); *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1556-57 (11th Cir. 1989).  Without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise. For example, in *Wright v. Sheppard*, the Eleventh Circuit held that a sheriff's department was not liable for a deputy's acts when "no evidence of a history of widespread prior abuse . . . put the sheriff on notice of the need for improved training or supervision."  919 F.2d at 674.  Indeed, in *Church v. City of Huntsville*, the Eleventh Circuit reversed a district court's preliminary injunction against the City of Huntsville, holding that the plaintiffs were not likely to succeed on the merits of their failure-to-train claim without proof that the City was aware of a prior incident in which constitutional rights were similarly violated.  30 F.3d at 1342-46.  *See also Popham v. City of Talladega*, 908 F.2d 1561, 1564-65 (11th Cir. 1990) (finding no liability for failure to train when no pattern of incidents put the City on notice of a need to train).  More importantly, in *Brooks v. Scheib*, 813 F.2d 1191 (11th Cir. 1987), even though there had been ten citizen complaints about police officer Scheib, the Eleventh Circuit held that the City did not have any notice of past police

Page 19 of 23

misconduct because the plaintiff "never demonstrated that past complaints of police misconduct had any merit." *Id*. at 1193.  That court aptly noted, "Indeed, the number of complaints bears no relation to their validity." *Id.*

Thus, even assuming that Officer Garrett deprived plaintiff of a statutory or constitutional right cognizable under § 1983, there is no evidence that the City was on notice of a need to train the police officers differently or in greater depth to deal with domestic situations.  Indeed, Chief Fowler testified that a situation like this had never occurred before.  There is no showing that the actions of the officer or the chief were based on any written or unwritten policy of the Town of Fyffe Police Department.  Thus, there is simply no evidence supporting municipal liability.

**Alleged 42 U.S.C. § 1985(3) Violation**

Plaintiff also alleges that she was discriminated against based on her sex.  Title 42 U.S.C. § 1985(3) states:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person

> as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

Under this statute, "[t]he language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Following up on this, the Eleventh Circuit stated:

> It is clear to us, however, that if Griffin's "perhaps otherwise class-based, invidiously discriminatory animus" means anything at all--and we think it does--it includes sex-based animus against women. Sex-based classifications receive heightened scrutiny under the Equal Protection Clause,

*Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332, 1337 (11th Cir. 1999).

Page 21 of 23

Plaintiff's support for her claim that she was subject to mistreatment by the Town of Fyffe Police Department is based solely on the fact that defendants and her ex-husband are male and she is female. When asked at trial if she believed the treatment she received was based on her gender, plaintiff responded that she did not know. There was no other evidence of animus based on gender introduced by plaintiff. Furthermore, one of the original defendants, Jana Wyant, is female. Thus, plaintiff has not only failed to show that defendants' actions violated any statute or constitutional rights, she also has failed to demonstrate that there was some class-based invidiously discriminatory animus behind the alleged conspirators' actions. Because there has been no deprivation of a statutory or constitutional right, privilege or immunity, there can be no conspiracy to have done so. Thus, there is no basis for Johnson's claim under 42 U.S.C. § 1985(3).

If the evidence reflects any "conspiracy" at all, it was a conspiracy to keep the peace. This is a discretionary function of both Officer Garrett and Chief Fowler and they are, thus, protected by qualified immunity. Additionally, as previously discussed, the Town of Fyffe also has not been shown to be responsible for any violation of plaintiff's rights.

## CONCLUSIONS

Based on the foregoing, the court concludes that defendants' motion for a directed verdict is due be GRANTED on the basis that plaintiff has failed to provide

Page 22 of 23

a legally sufficient evidentiary basis for either claim against Officer Timothy Garrett,

Chief Jake Fowler, or the Town of Fyffe.   In the alternative, the court finds that

defendants Timothy Garrett and Jake Fowler are entitled to qualified immunity from

either of the claims alleged by plaintiff.   A separate order in conformity with this

Memorandum Opinion will be entered contemporaneously herewith.

DONE this 3rd day of April, 2009.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE